IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

SUSAN BROWN-THILL,              )
                               )
                    Plaintiff, )
                               )
v.                             )          Case No.: 11-1245-CV-W-SOW
                               )
RICHARD BROWN,                 )
                               )
                    Defendant. )


## ORDER

Before the Court are plaintiff Susan Brown-Thill's Application to Confirm Arbitration Award
(Doc. #1), plaintiff Susan Brown-Thill's Motion for Summary Judgment on Her Application for
Confirmation of the December 12, 2011 Arbitration Award and Order (Doc. #23), defendant Richard
Brown's Cross-Motion for Summary Judgment Vacating Arbitration Award (Doc. #38), defendant
Brown's Motion for Leave to File copy of Professor Hanna's Certification (Doc. #57), and Brown's
Motion Requesting Court to Consider When Deciding Pending Summary Judgment Motions Related
State Court Litigation Order (Doc. #68).

This case involves an arbitration award in plaintiff Susan Brown-Thill's ("Brown-Thill")
favor removing defendant Richard Brown ("Brown") as co-trustee of their father's trust, invalidating
his appointment of a successor trustee, and extending the term of employment of Melinda Pomeranke
("Pomeranke"), an employee of one of the limited partnerships operated by the family's trusts.

Brown-Thill seeks confirmation of the arbitrator's award, and attorneys' fees pursuant to the parties' arbitration agreement. Brown asks the court to vacate the award of the arbitrator, arguing that the arbitrator exceeded his authority, was biased in favor of Brown-Thill, and committed misconduct. The parties have filed cross-motions for summary judgment.

## I. Background[1]

Brown and Brown-Thill are siblings and beneficiaries of two trusts established by, and named after, their now deceased parents, Eugene D. Brown ("Eugene") and Saurine L. Brown ("Saurine"). Since the death of their mother in 2009, Brown and Brown-Thill have served as co-trustees of the Eugene D. Brown Trust ("EDB"). James Cooper ("Cooper"), an attorney practicing in the trusts and estates field, serves as the sole trustee of the Saurine L. Brown Trust.

In order to manage family property, Eugene and Saurine organized two family limited partnerships and one limited liability company in Kansas. The partnerships are the 7219 Metcalf Partnership L.P. ("FLP I") and the 7219 Metcalf Partnership L.P. II ("FLP II"). FLP I and FLP II are both controlled by a limited liability company, Brown Bear, L.L.C. ("Brown Bear"), as General

---

[1] For the purposes of this motion, the Court finds the facts to be as follows. Properly controverted facts, facts immaterial to the resolution of the pending motion, and arguments presented under the guise of facts have been omitted. Moreover, Local Rule 56.1(a) states that "the suggestions in opposition to a motion for summary judgment shall begin with a section that contains a concise listing of material facts as to which the party contends a genuine issue exists. Each fact in dispute *shall be set forth in a separate paragraph, shall refer specifically to those portions of the record upon which the opposing party relies, and if applicable, shall state the paragraph number in movant's listing of facts that is disputed.*" (emphasis added).

    Regrettably, the briefing by Brown's counsel was subpar, with disorganized and haphazard arguments. For example, Brown filed approximately seven documents purporting to respond to Brown-Thill's motion for summary judgment. Many of these purported responses violate every applicable local rule. However, because the Court felt that striking all of Brown's filings would be unfair, the Court has spent the last few months reading the thousands of pages in these documents to reach a decision. For future cases, the Court hopes Brown's counsel will be mindful of the Court and the considerable time it takes for the undersigned and his staff to scour such voluminous filings.

    With that said, the Court has not considered many of the purported facts that Brown claims are controverted for numerous reasons. First, Brown has failed to properly cite to parts of the record, including deposition testimony, documents, affidavits, etc. Where Brown provides citations, he fails to adequately identify with any specificity document or exhibit to which he is citing or relying.

Partner. Brown Bear, in turn, is controlled by its members, the EDB and SLB trusts. Each trust owns a 50% membership interest in Brown Bear, and any action taken by Brown Bear requires the approval of both trusts. Therefore, trustees Brown, Brown-Thill, and Cooper must all agree before Brown Bear can take any action.

The EDB revocable trust was established by Eugene in 1989, and was restated twice, most recently in 2007, when Eugene executed the "Second Restatement of Revocable Trust Agreement" ("trust agreement"). Eugene was the sole trustee and beneficiary of the trust until his death in 2008. Upon his death, and as the trust agreement provided, a portion of the principal was placed into a marital trust, established for Saurine's benefit, while the remainder was placed in a separate residuary trust for the benefit of Saurine and her descendants. After Saurine died in 2009, Brown and Brown-Thill became co-trustees. As co-trustees, Brown and Brown-Thill are charged with distributing Saurine's trusts into two separate residuary trusts, under which each will become the sole trustee and sole beneficiary. The co-trustees have yet to effectuate their father's plan, and therefore the estate exists as it did before Saurine's death. The residuary trust, but not the marital trust, permitted discretionary distributions to Saurine's descendants only during her lifetime, so the co-trustees cannot currently distribute income or principal to their own descendants. It is unclear if they are income beneficiaries themselves. Brown-Thill does not claim to have any children, but Brown has two minor children who will be qualified to become discretionary income beneficiaries, and to receive discretionary disbursements of principal, from Brown's separate trust. After the separate trusts are created, Brown and Brown-Thill each will have a limited power of appointment to

distribute the principal of their own trusts to their descendants, in trust or outright, in whatever proportion they designate by will. However, the trust provides that each child under the age of 30 will become the sole beneficiary of a separate contingent trust, the principal of which be fully paid by age 30. Failing such exercise, each of their living descendants will receive the principal *per stirpes*.

The other provisions of the trust agreement dispositive here include those related to trustee succession and trustee removal contained in Article V. Trustees may be appointed under four circumstances: (1) by a trustee, when there is only one trustee, (2) by co-trustees acting jointly, where two or more co-trustees are then acting, (3) by a majority vote of the beneficiaries, if no trustee is currently acting and no successor has been appointed, (4) by majority vote of the income beneficiaries, after voting to removing a trustee. Since Brown and Brown-Thill are co-trustees, they must both approve the appointment of a trustee. Any trustee may resign by delivering a written notice of intent to resign in 30 days to the income beneficiaries and to any co-trustee then acting, and thereafter settling his or her account. The trust agreement provides the trustees may be removed by a majority vote of the income beneficiaries, but does not explicitly limit or prevent statutory removal of a co-trustee for cause.

As co-trustees, Brown and Brown-Thill have wide authority to administer the trusts. Each has "full power and authority to do all things necessary and proper to manage, control, invest, and reinvest the assets constituting the trust estate . . . in the same manner as if the Trustee were the fee simple owner of the trust estate." The trust agreement also provides that the administration of the trust and the agreement itself will be governed by the law of the trust situs, and that the trust situs shall

△4△

be in Florida "unless changed by the trustee" pursuant to the trust agreement. The parties agree that the trust situs has not been changed from Florida.

In March 2010, Brown and Brown-Thill entered into an arbitration agreement to resolve their many disputes over family business out of court. It provides, "All existing and future controversies between the parties . . . whether in their individual capacities, their capacities as co-beneficiaries and/or co-trustees of the [EDB trust] and the [SLB trust] . . . or in their capacities as co-owners, partners, or members of any business entity, including . . . [FLP I, FLP II, and Brown Bear] . . . which arise out of or relate to the administration and investment of the trusts, partnerships and assets of the [Brown] estates, the payment of estate taxes . . . or the division of assets of such estates . . . shall be submitted to binding arbitration." The Agreement also provides that if "either party fails to follow or abide by the arbitrator's required procedures . . . the arbitrator shall be authorized to resolve the issue without the full participation of the non-abiding party and both parties shall be bound by the arbitrator's decision." One month later, in April 2010, the parties executed an amendment to the Agreement selecting Rich McLeod ("McLeod") as the arbitrator, giving him "full and complete binding authority to resolve any and all issues submitted to him for arbitration."

Unfortunately, the arbitration agreement failed to provide a neat solution to the parties' difficulties, and the parties arbitrated several disputes before McLeod. The parties' ongoing disagreements, in and out of arbitration, spurred Brown-Thill to take steps to overcome Brown's resistance and finally, to submit to arbitration a motion to remove him as co-trustee. Before she could arbitrate the issue, however, Brown surprised everyone by executing a written notice of

resignation "effective upon the appointment of John L Rubinstein" ("Rubenstein") as successor co-trustee. In connection with his resignation, Brown and Rubenstein executed a separate document whereby Brown unilaterally appointed Rubinstein as his successor co-trustee and Rubinstein accepted Brown's appointment. Brown testified that on the following day he hand-delivered his notice of resignation and the document memorializing Rubinstein's appointment and acceptance to Brown-Thill's counsel. Thereafter McLeod adjourned the arbitration.

In her email response, Brown-Thill, through counsel, contested Brown's ability to unilaterally appoint a successor co-trustee, but acknowledged her belief that pursuant to the EDB trust agreement Brown's resignation would be effective upon her acceptance of Rubenstein's appointment. Her testimony at the December 5, 2011 arbitration shows that she and Cooper thereafter met with Rubenstein on several occasions, and that she intended to condition her acceptance of his appointment upon his agreement to take certain actions as co-trustee, including signing the documents required to effectuate a March 14, 2011 arbitration award, and agreeing to extend Pomeranke's employment. Apparently she came close, since she signed various documents that appear to show her acceptance. For example, a document, undated, and titled, "Agreement Regarding Trustee Compensation for the EDB Marital Trust," signed by Brown-Thill and Rubenstein, includes the recital that "John L. Rubenstein is serving as Co-Trustee of the EDB Marital Trust" (but not the residuary trust), and sets Rubenstein's compensation as $5,000 per month for October through December 2011, and thereafter at $200 per hour, payable monthly. Several other documents signed by Brown-Thill and Rubenstein related to Brown Bear activities, but Cooper did not sign them. Both Cooper and Brown-Thill

testified at the arbitration hearing that at no point had she signed the "Trustee Succession Agreement" that would trigger the effectiveness of the documents she had signed. A copy of this undated agreement was presented to the Court by Brown and shows that Rubenstein was the only party who signed.

For various reasons Brown-Thill and Cooper could not cooperate, and Brown-Thill eventually informed Rubinstein that she was not willing to approve him as successor co-trustee. On October 21, 2011, believing he had been appointed by Brown and hired by Brown-Thill, Rubenstein informed Brown-Thill's counsel that he refused to resign.

On October 25, 2011, Brown-Thill sent notice to Brown that three issues would be arbitrated. They were: (1) the extension of Pomeranke's term of employment, (2) whether Brown's resignation and unilateral appointment of Rubinstein as his successor co-trustee was effective, and (3) Brown-Thill's request for Brown's removal as co-trustee. The parties scheduled arbitration on December 5, 2011.

On October 26, 2011, Brown sought declaratory relief confirming his appointment of Rubenstein in the Circuit Court of Jackson County, Missouri.[2] On December 2, 2011, Brown reiterated his willingness to resign by delivering to Brown-Thill another notice, which explicitly stated

---

[2] Case No. 1116-CV30521. On October 29, 2012, the Missouri Circuit Court cancelled a scheduled trial and stayed the action pending the outcome in this case.

△7△

it was to be effective in 30 days.

On December 5, the parties convened. Brown testified that he met with McLeod ex-parte prior to the meeting, where McLeod allegedly informed him that he had already made up his mind to remove Brown as co-trustee, and therefore his presence at the arbitration was unnecessary. McLeod also allegedly suggested that Brown submit an award proposal removing both co-trustees. At the hearing, which Brown did not attend, Brown-Thill and her counsel presented a case comprised of four live witnesses and 78 exhibits. At the conclusion of the hearing, McLeod announced his intention to grant Brown-Thill's motion. On December 12, 2011, McLeod issued his award:

1. The motion to continue Melinda Pomeranke's contract with the EDB Trust is granted, and the EDB Trust is authorized and directed to agree with any other interested entities, including without limitation Brown Bear LLP, FLP I and II, and the SLB Trust, to proffer to Pomeranke a contract extending her employment under the same terms and conditions as her current contract, with such scrivening modifications as are necessary to make it reasonable considering the current time frame, through the closing of the Brown estate and for a reasonable period thereafter to wind up estate matters. If Pomeranke accepts such contract, it shall be binding on the EDB Trust.

2. Because Brown's conditional resignation as a Co-Trustee on October 10, 2011 was neither effective nor valid, it is Ordered that Brown remains as a Trustee through today's date, as he has not effectively resigned under any term of the Trust. Likewise, the ineffective conditional appointment of John Rubenstein as successor Co-Trustee is invalid, and Rubenstein has not been and shall not be deemed to have been a Trustee or Co-Trustee of the EDB Trust at any time up to an including the date of this Award and Order.

3. Richard Lotman Brown is removed as Trustee, Co-Trustee, and/or Successor Co-Trustee of the EDB Trust or Trusts, and shall have no power, right or responsibility to act as such after today's date.

## II. Standard

A motion for summary judgment is appropriate if there is no genuine dispute of material fact

Case 4:11-cv-01245-SOW   Document 72   Filed 03/08/13   Page 8 of 30

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Celotex Corp.</u> <u>v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Friedberg v. Chubb & Son, Inc.</u>, 691 F.3d 948, 951 (8th Cir. 2012). "A fact is 'material' if it might affect the outcome of the case and a factual dispute is 'genuine' if, based on the evidence, a reasonable jury could return a verdict for the [opposing] party." <u>Die–Cutting Diversified, Inc. v. United Nat'l Ins. Co.</u>, 353 F. Supp. 2d 1053, 1054–55 (E.D. Mo. 2004). The moving party bears the burden of informing the court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. <u>Celotex Corp</u>, 477 U.S. at 322-23; <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1042 (8th Cir. 2011). If the moving party satisfies its burden, the opposing party "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Cooper v. Martin</u>, 634 F.3d 477, 480 (8th Cir. 2011) (quoting <u>Anderson v.</u> <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). In reviewing a motion for summary judgment, the court must view any inferences to be drawn from the underlying facts in the light most favorable to the opposing party. <u>U.S. v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1960); <u>Lickteig v. Bus. Men's Assur. Co.</u> <u>of Am.</u>, 61 F.3d 579, 583 (8th Cir. 1995). "Mere allegations, unsupported by specific facts or evidence beyond the [opposing] party's own conclusions, are insufficient to withstand a motion for summary judgment." <u>Thomas v. Corwin</u>, 483 F.3d 516, 526–27 (8th Cir. 2007).

III. <u>Standards for Confirming or Vacating an Arbitrator's Award</u>

⌂9⌂

The Federal Arbitration Act ("FAA") provides that where "parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration," a District Court "must confirm" the award "unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §10 and §11]." 9 U.S.C. § 9; Hall Street Assocs. L.L.C. v. Mattel, Inc., 552 U.S. 576, 576 (2008). The arbitration agreement states that "Judgment may be entered upon any award rendered by the arbitrator in accordance with applicable law in any court of competent jurisdiction." Thus this court is authorized to confirm the award.

Vacating an arbitration award, by contrast, is no simple matter. Courts accord an "extraordinary level of deference" to arbitration awards. Medicine Shoppe Intern. Inc. v. Turner Inves. Inc., 614 F.3d 485, 488 (8th Cir. 2010); Schoch v. InfoUSA, Inc., 341 F.3d 785, 788 (8th Cir.2003). "Courts have no authority to reconsider the merits of an arbitration award, even when the parties allege that the award rests on factual errors or on a misinterpretation of the underlying contract." Medicine Shoppe, 614 F.3d at 488 (citing Schoch, 341 F.3d at 788). An arbitrator's broad authority is subject only to limited judicial review. Id. A party seeking to vacate an arbitrator's decision must look to the FAA, 9 U.S.C. §10, which provides the exclusive grounds for vacating an arbitrator's decision. Id. At 489; Crawford Grp. Inc. v. Holekamp, 543 F.3d 971, 976 (8th Cir. 2008) (citing Hall Street, 552 U.S. at 584). Section 10(a), in relevant part, provides that the court may vacate an arbitrator's award:

(2)     where there was evident partiality or corruption in the arbitrators, or either of them;

(3)     where the arbitrators were guilty of misconduct in refusing to postpone the hearing,

upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10(a)(2)-(4).   It is against this backdrop that the Court considers Brown's various reasons for vacating McLeod's award.

## IV. Discussion

### A.   Substantive Arbitrability

As mentioned above, Brown-Thill submitted three issues to McLeod:   (1) the extension of Pomeranke's term of employment; (2) whether Brown's resignation and unilateral appointment of Rubinstein as his successor co-trustee was effective; and (3) Brown-Thill's request for Brown's removal as co-trustee.   Brown argues that issues (2) and (3) were not arbitrable for several reasons.[3] First, he claims he was not a trustee at the time of the arbitration, and thus there was no dispute to be arbitrated.   Second, he argues that his children are qualified beneficiaries whose legal interests are affected by the award, and that he did not agree to arbitrate as their representative.   Third, he argues that his unilateral appointment of Rubenstein was effective, obviating arbitration.   Lastly, he argues that the issue of Rubenstein's employment could not be arbitrated because Rubinstein was not a party to the arbitration agreement.   All of these arguments involve a challenge to the arbitrator's substantive jurisdiction.     In summary, Brown's argument is that there was either no dispute, because he was within his rights in acting, or that the parties did not agree to arbitrate issues in which third

---

[3] Brown does not argue that the portion of the award extending Pomeranke's term of employment should be vacated.

parties were involved.

Courts are authorized to decide whether an arbitrator had jurisdiction over a particular dispute unless the parties to an arbitration agreement agreed to submit such questions to the arbitrator. First Options of Chi. Inc. v. Kaplan, 514 U.S. 938, 943 (1995) ("If . . . the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently"); Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Ironworkers, Shopman's Local 493 v. Efco Corp. and Constr. Prod., Inc., 359 F.3d 954, 956 (8th Cir. 2004) ("[A]ny question as to whether a valid arbitration agreement applies to the subject matter at hand is a question for a court to answer"); Int'l. Bhd. Elec. v. Hope, 380 F.3d 1084, 1098 (8th Cir. 2004) ("Jurisdictional challenges of a substantive nature . . . are generally for the courts to resolve and relate to . . . whether the contract, in fact, authorizes the arbitrators to decide the substantive issue submitted for resolution"). Here, the parties did not agree to submit disputes over the arbitrator's jurisdiction to McLeod, so this Court must decide whether the issues he arbitrated were outside the scope of the parties' agreement.

In evaluating such a claim, the Court must heed the liberal federal policy favoring arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); Electrolux Home Prod. v. United Auto. Aerospace and Agr. Implement Workers of Am., 416 F.3d 848, 853 (8th Cir. 2005) (Courts "must uphold an arbitrator's award [a]s long as the arbitrator's award draws its essence from the collective bargaining agreement") (internal quotations omitted). At the same time, courts

△12△

must keep in mind that the arbitrator derives his powers solely from the arbitration agreement. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S.Ct. 1758, 1774 (2010) (An "arbitrator derives his or her powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution"). An arbitration agreement is a matter of contract, and thus parties cannot be compelled to arbitrate disputes outside the scope of their agreement. United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960); Hope, 380 F.3d at 1101. Under 9 U.S.C. § 10(a)(4), the Court may vacate an award "where the arbitrators exceeded their powers," but only when "the arbitrator strays from interpretation and application of the agreement and effectively 'dispense [s] his own brand of industrial justice.'" Major League Baseball Players Assn. v. Garvey, 532 U.S. 504, 509 (2001) (per curiam) (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 80 S.Ct. 1358, 1361 (1960)).

The arbitration agreement's term describing the universe of disputes that may be arbitrated is broadly inclusive. Brown and Brown-Thill agreed to arbitrate "all" disputes between them "in their individual capacities" or in their capacities "as co-beneficiaries and/or co-trustees of the [EDB trust] . . . which arise out of or relate to the administration or investment of the trusts, partnerships, and assets of the Eugene D. Brown and Saurine L. Brown estates . . . shall be submitted to binding arbitration." This term is unambiguous. The only limitation is that the dispute must "arise out of or relate to" administration of the Brown estates and be "submitted" to arbitration. The Court now turns to each of Brown's arguments.

1. Brown's Resignations

△13△

Brown argues that McLeod exceeded his authority when he found that his first resignation was invalid because, in Brown's view, there was no longer any arbitrable dispute. Of course, the existence of a dispute is a prerequisite to arbitration; and while it is true that McLeod would have exceeded his powers if Brown's resignation was valid, here Brown's resignation was not valid. The trust agreement states that a trustee may resign only by giving 30 days' notice to all income beneficiaries and co-trustees, and that a trustee may only be fully discharged after a full settlement of the trustee's accounts. Brown's resignation, however, was conditioned "on the appointment of John L. Rubenstein as my Successor Co-Trustee." Brown urges that co-trustees may appoint trustees jointly and, he alleges, Brown-Thill agreed to Rubinstein's appointment; but Brown's first resignation was ineffective in any event because it was conditional on the unilateral appointment of Rubenstein. Brown was also required, under the trust agreement at least, to settle his account before being fully discharged, and he did not claim or present evidence that he did so prior to or after the arbitration.

### 2. Removal of Brown As Co-Trustee[4]

In spite of his arguments that he had twice resigned prior to the arbitration, Brown urges that McLeod exceeded his powers by removing him as co-trustee. He first argues that the trust agreement forecloses statutory removal. Second, he argues that he did not agree to arbitrate on behalf of his children, who are qualified beneficiaries and thus, he claims, necessary parties to any trustee removal action. Therefore, he reasons, McLeod exceeded his powers by adjudicating a dispute that involved third parties not represented by Brown and Brown-Thill.

---

[4] McLeod reached his decision by applying Florida and Missouri statutes. The Court reviews the matter under the law of both jurisdictions.

Case 4:11-cv-01245-SOW   Document 72   Filed 03/08/13   Page 14 of 30

### a.   Statutory Removal

Brown-Thill requested Brown's removal under similar Florida and Missouri statutes, whereby "[A] cotrustee . . . may request the court to remove a trustee" when, as found by McLeod in his award: "(b) The lack of cooperation among cotrustees substantially impairs the administration of the trust"; and "(c) Due to the unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries."   Fla. Stat. § 736.0706(2)(b)-(c); Mo. Rev. Stat. § 456.7-706.2(2)-(3).   The Missouri and Florida statutes also allows all beneficiaries acting together to remove a trustee for cause. Fla. Stat. § 736.0706(2)(d); Mo. Rev. Stat. § 456.7-706.2(4).   Article V § (C) of the trust agreement, the only term regarding removal, allows a majority of income beneficiaries to remove a co-trustee and select another, and provides that "such removal or appointment shall be without hearing or order by any court."   The Court finds that the trust agreement does not foreclose statutory removal.   The trust agreement was restated in 2007, after both states had adopted the Uniform Trust Code, and § (C) may have been intended to remove the requirement that beneficiaries act unanimously and apply to a court for removal.[5]   There is no language in this section limiting the reach of relevant law, as there is in other sections of the trust agreement.   To find otherwise would allow the trust instrument to prevent a court or arbitrator from enforcing, for example, the trustee's duty of loyalty to the beneficiaries.   The Court finds that this language merely provides an additional avenue for beneficiaries to remove a trustee without application to a court.

---

[5]  Florida adopted the Uniform Trust Code in June 2006, effective July, 2007.    The second restatement of the EDB trust agreement was executed January 3, 2007.

## b. Necessary Parties

Brown's argument that McLeod exceeded his authority because Brown did not agree to arbitrate on behalf of his children assumes the dispute involved Brown's children, when in fact it did not. The dispute was between Brown and Brown-Thill in their capacities as co-trustees, and at no point did Brown argue that his children properly disputed his removal or were otherwise involved in the arbitration. However, underlying Brown's argument is the assumption that McLeod's award affected the rights of his children, and this concern has more weight. While the award does not refer explicitly to the rights of Brown's children, an arbitration between co-trustees has the potential to

affect the rights of beneficiaries who are non-signatories to the arbitration agreement.[6] Underlying Brown's argument is his claim that his children (a) are beneficiaries that (b) would have been necessary parties in an action in court to remove him as trustee. These claims are disputed by the parties. Therefore, the Court must determine whether Brown's claims are true under the circumstances presented here.

---

[6] It is unclear whether the Court could vacate the award if it somehow affected the rights of Brown's children. Some courts have found that when an award explicitly purports to determine the rights and obligations of non-signatory third parties, the award must be vacated. See, e.g., Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277 (9th Cir. 2009), cert. denied 130 S.Ct. 145 (2009); Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Panama, 312 F.2d 299 (2nd Cir. 1963), cert. denied, 373 U.S. 949 (1963). By extension, an award that had the practical effect of precluding or otherwise adversely affecting the rights of non-signatory third parties might exceed the powers of the arbitrator and require vacatur. As the Court discusses below, however, the award did not affect the rights of Brown's children, so the Court need not consider this issue. Additionally, it appears that if Brown's children were "aggrieved" by the award, they would have had standing under 9 U.S.C. § 10(c) to vacate the award. Brown's children did not apply to vacate the award, and Brown's suggestion of his willingness to join his children as defendants came after the statute of limitations found in 9 U.S.C. §12 expired.

The Court finds that Brown's children are qualified beneficiaries under Florida law and beneficiaries under Missouri law. Brown's children will receive trust income and principal at Brown's discretion when the separate residuary trusts are created, and will receive outright or in trust any portion of the principal that Brown appoints by will. Missouri defines a beneficiary as a person who "has a present or future beneficial interest in a trust, vested or contingent." Mo. Rev. Stat. § 456.1-103(3)(a). Therefore, in Missouri, Brown's children are beneficiaries because they have a vested contingent future interest. Under Florida law a "qualified beneficiary" is one who, "on the date the beneficiary's qualification is determined":

(a)     Is a distributee or permissible distributee of trust income or principal;

(b)     Would be a distributee or permissible distributee of trust income or principal if the interests of the distributees described in paragraph (a) terminated on that date without causing the trust to terminate; or

(c)     Would be a distributee or permissible distributee of trust income or principal if the trust terminated in accordance with its terms on that date.

Fla. Stat. § 736.0103. None of the beneficiaries are currently entitled to trust income or principal, given that Saurine's estate has not been terminated and discretionary disbursements could have been made only during her lifetime. Assuming the interests of Saurine, who is the only distributee under subsection (a), terminated, Brown would be a qualified beneficiary under (b), as would Brown's children under (c). If the separate trusts had already been created, Brown's children would be permissible distributees under (a), and his children under (b). Under any of the above circumstances, and in either jurisdiction, their interest is in the proper administration of the trust before and after

Saurine's trusts terminate, since the principal of Saurine's trusts will eventually flow into their father's trust, and finally to them.

There are no statutes in Missouri or Florida requiring joinder of beneficiaries in a trustee removal action. Brown's argument that his children are necessary parties to any trustee removal action is based solely on the general statement, often recited by courts, that "in suits respecting trust property, brought either by or against the trustees, the *cestuis que trust* as well as the trustees are necessary parties. Carey v. Brown, 92 U.S. 171, 172 (1875). It appears, however, that this general rule is not a strict rule. In Carey, the Court noted there were several exceptions, as where, in a suit by a trustee to recover trust property or reduce it to his or her possession, the *cestuis que trust* are not necessary parties because the action does not affect their relationship to the trustee. Id. at 172. Florida cases applying the rule and its exceptions are rare. Brown cites to Tick v. Cohen, 787 F.2d 1490 (11th Cir. 1986) (per curiam), where the Eleventh Circuit stated the "general rule" that "all beneficiaries are persons needed for just adjudication of an action to remove trustees and require an accounting or restoration of trust assets." Id. at 1494 (quoting Walsh v. Centeio, 692 F.2d 1239, 1243 (9th Cir.1982)). In Tick, the plaintiff beneficiaries of several land trusts alleged the trustees had breached their fiduciary duties by engaging in self-dealing. The court determined joinder was necessary and dismissed the action by applying a four-factor test found in Fed. R. Civ. P. § 19(b), whereby it concluded, *inter alia*, that a judgment rendered in federal court could adversely affect the interests of the beneficiaries of another trust because it was alleged to have been a receptacle for the

wrongly appropriated funds the plaintiffs sought to recover. In addition to this case being factually

distinguishable, Brown disregards the bulk of the "general rule" stated by the court, which adds that

beneficiaries are necessary when a trustee removal action *also* "require[s] an accounting or restoration

of trust assets." Id. Here no accounting is involved and there is no allegation of misappropriation

or a request to restore trust assets. The other cases Brown cites are similarly distinguishable. See

Butler v. Saunders, No. 11-CV-1273-MAP, 2011 WL 4356207 at *4 (M.D. Fla. Sept. 19, 2011) (citing

general rule stated in Tick, guardian of beneficiary ward was necessary party in action by others to

remove the trustee and terminate the source of the trust's assets); Crescenze v. Bothe, 4 So. 3d 31 (Fla.

Dist. Ct. App. 2009) (in action to terminate a trust, beneficiaries were necessary parties to a suit having

the termination of the beneficiaries' interest as its ultimate goal); Griley v. Marion Mortg. Co., 132

Fla. 299 (Fla. 1937) (in a foreclosure action on a trust deed, stating the general rule that the *cestuis que*

*trust*, here bondholders, were necessary parties); Betty G. Weldon Revocable Trust v. Weldon, 231

S.W.3d 158 (Mo. Ct. App. 2007) (where judgment construed the trust and affected trust property, the

income-producing potential of the trust, and the residuary corpus, residuary beneficiaries were

aggrieved parties with standing to appeal the trial court's judgment); Roth v. Lehmann, 741 S.W.2d

860 (Mo. Ct. App. 1987) (beneficiaries are necessary parties in a suit to remove trustee where

judgment would reduce trust corpus, and because they are entitled to a final accounting); Riggs v.

Moise, 344 Mo. 177 (Mo. 1939) (resignation of trustee was invalid because the trust was silent on

resignation and therefore the resignation required notice to beneficiaries who had capacity to give

consent, and beneficiaries were not notified). In all of these cases, the beneficiaries were necessary

parties because an accounting was involved, the trust itself would somehow be affected by the judgment, or notice and consent of the beneficiaries was not obtained where it was required.

Practice commentaries and treatises note that the opposite of the general rule as stated in Carey and Tick is sometimes true. See W. W. Allen, Commentary, Trust Beneficiaries As Necessary Parties to Action Relating to Trust or Its Property, 9 A.L.R.2d 10 § 1(b) (1950) ("One may even find authority to the effect that the rule is in large part the direct opposite of [the general rule]."); George Gleason Bogert, George Taylor Bogert & Amy Morris Hess, Bogert's Trusts and Estates, § 522 (3d ed. 2012) ("[Beneficiaries] must all be made parties to [a trustee removal action] in some capacity," but noting several cases holding otherwise); Laura Dietz, et al., Proceeding for Appointment, Removal, or Succession of Trustees, 76 Am. Jur. 2d Trusts § 618 (2013) ("While beneficiaries of a trust are sometimes deemed necessary parties to a removal proceeding, particularly in a jurisdiction in which all persons interested in the trust . . . are necessary parties . . . , in other instances beneficiaries of a trust are not considered to be necessary parties"). The American Law Reports state, "As to whether in a proceeding merely to obtain the removal of trustees cestuis are necessary parties, the cases are involved in some uncertainty and confusion, in part, it seems, for want of consistently distinguishing the cases in which accountings have been sought." W. W. Allen, Commentary, Trust Beneficiaries As Necessary Parties to Action Relating to Trust or Its Property, 9 A.L.R.2d 10 § 23 (1950). This is because "[o]rdinarily in a proceeding involving an accounting by trustees the cestuis are necessary parties." Id. One rationale for joining beneficiaries in an action for an accounting was offered by the Supreme Court of Oklahoma when it stated, "It is well established that the rule that

⌂20⌂

all beneficiaries are proper parties to an accounting is for the protection of the trustee alone, to guard him from a multiplicity of suits, and that the requirement may be waived by him." <u>Moody v. Branson</u>, 136 P.2d 925 (Okla. 1943). If one concern here is that Brown might be subjected to a "multiplicity of suits" contesting his final accounting, the absence of a required accounting would suggest that his children are not necessary parties.

It appears from the Court's review of the case law that applying the "general rule" found in <u>Carey</u> and <u>Tick</u> would be misguided. Under the facts and circumstances here, it does not appear that joinder was necessary. In Florida, "[a]n indispensable party is one whose legal or beneficial interest in the subject matter makes it impossible to completely adjudicate the matter without affecting that party's interest." <u>Lee v. Cole</u>, 46 So. 3d 612, 613 (Fla. Dist. Ct. App. 2010). Missouri Supreme Court Rule § 52.04(a) is similar in substance, but includes concerns that parties already joined not be subjected to multiple or conflicting obligations as a result of the other party's claimed interest.[7] Other than stating the "general rule," Brown does not offer much justification for joinder. Brown merely states that his children have an interest in protecting themselves from Brown-Thill, whom he believes is unable to withstand the influence of Cooper. His concerns are misplaced. The arbitrated dispute was whether Brown, not Brown-Thill, should be removed as trustee, and Brown has not alleged that Brown-Thill is mismanaging the trust. It is also unclear how the joinder of Brown's

---

[7] Missouri Supreme Court Rule 52.04(a): "A person shall be joined in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant."

minor children would have produced a different outcome.  In a state court proceeding, they would probably have been represented by a guardian ad litem or joined as nominal parties.   Their objections to Brown's removal, if any, would have been similar to Brown's.   Additionally, their right to assure the effective administration of the trust is not precluded by the award.   They have the same statutory right as Brown to remove Brown-Thill as trustee, should they or their guardian so desire.   As discussed above, the absence of a required accounting means that Brown will not be subjected to multiple suits, and his children, as well as Brown-Thill, may still object to his final accounting or request restitution in another proceeding.   Most importantly, the disposition of the beneficial interests of Brown's children are not in any way affected by Brown's removal.   The only apparent consequence to the award is that Brown is removed and trust management may now proceed unimpeded by the parties' disagreements.

In a court proceeding, the parties would probably request, or the court would require, a final accounting and release, thus necessitating the joinder of all the beneficiaries.   Such was not the case here, since the only issue presented to the arbitrator was Brown's removal.   The Court therefore finds that in under the facts as presented in this case, Brown's minor children, though qualified beneficiaries, are not necessary parties required to be joined for just adjudication of the dispute because no accounting is involved, and the award does not affect their beneficial interests. Otherwise, the dispute was arbitrable between the parties, and arose out of the administration of the EDB trust.   Therefore, McLeod did not exceed his powers.

3.   Rubenstein's Appointment

⌂22⌂

Brown argues that the trust agreement authorized him to unilaterally appoint a trustee, and that because he had appointed Rubenstein, there was no dispute between the parties. The relevant terms in the trust agreement read as follows:

> Article V § (A)(4): "At any time after qualifying as Trustee, any individual acting as Trustee may appoint a successor Trustee," but "any such appointment shall be effective only if no other successor Trustee would then be acting under the above provisions."

> Article V § (A)(5): "The Trustee or Trustees acting at any given time (acting jointly if more than one) may appoint one or more Co-Trustees."

Brown executed two separate documents prior to the arbitration: a resignation, and an appointment of Rubenstein as co-trustee. His resignation, as discussed, was invalid. His appointment of Rubenstein was likewise invalid, because it purported to be a unilateral appointment of a successor co-trustee under § (A)(4).[8]

McLeod reasoned that "Brown did not have the right to unilaterally appoint Rubenstein . . . without the consent of Brown-Thill." McLeod's interpretation appears correct. The phrase "acting under the above provisions" refers most appropriately to § (A)(2), which names Saurine, Brown, and Brown-Thill "successor Trustees." The section Brown relied on, § (A)(4), should thus be read to prohibit any trustee from appointing a successor when Brown or Brown-Thill are acting as successor trustees.

---

[8] Brown's appointment of Rubenstein states, "This appointment is hereby made pursuant to the rights and powers granted to the undersigned under ARTICLE V, Paragraph A(4) of the Trust Agreement, which applies to each Trust."

The appointment itself being invalid, it would seem that Rubenstein's signature accepting the appointment was likewise invalid. Brown argues, however, that Brown-Thill could have assented under § (A)(5), which allows co-trustees to appoint trustees jointly. Indeed, Brown-Thill had entertained appointing Rubenstein, and the contracts she signed showing an intent to hire him were discussed at the arbitration. The concern here is that McLeod exceeded his authority by considering a dispute between Brown-Thill and Rubenstein, who was not a party to the arbitration, and was not provided with the opportunity to argue that the employment agreement or the other documents were enforceable. McLeod based his award, at least in part, upon such reasoning, and included in his statement of relevant facts a finding that Brown-Thill did not appoint Rubenstein, and the further statement that "Brown's attempt to appoint Rubenstein as his successor Co-Trustee is . . . null and void, because Brown-Thill did not consent to Brown's proposed appointment of Rubenstein as successor Co-Trustee." However, the document executed by Brown, unilaterally appointing Rubenstein, could not be interpreted as a nomination, to which Brown-Thill had only to assent, for the simple reason that it purports to be a unilateral appointment under Article V § (A)(4). Therefore, the documents Brown-Thill signed on her own, evincing an intent to hire Rubenstein, were not a necessary part of the inquiry. Brown-Thill could only have assented to an appointment made pursuant to Article V § (A)(5), and Brown does not suggest that his reference to § (A)(4) was a clerical error.

McLeod considered whether there was an agreement between Brown-Thill and Rubenstein in spite of Rubenstein's absence, but no evidence was presented at the arbitration or to the Court showing

that there was a valid agreement.   None of the documents presented by either party show that

Rubenstein was actually hired by Brown-Thill, despite the recitals in the undated employment

agreement.   The affidavits Rubenstein presented to the court do not explicitly state that Brown-Thill

orally agreed to his appointment as successor co-trustee, or that she ever signed an agreement

appointing Rubenstein.[9]

---

[9]      Even if Brown-Thill had orally agreed to hire Rubenstein, it would arguably be invalid under Missouri's statute of frauds provision as a contract not to be performed within one year.      See Mo. Rev. Stat. § 432.010.      For the same reason, the employment agreement cannot stand in as proof of intent to hire Rubenstein.

The award cannot affect rights that never existed, and it does not affect Rubenstein's legitimate legal remedies, if any, for work he performed in reliance on the invalid contracts. Otherwise, the dispute between Brown and Brown-Thill as co-trustees arose out of the administration of the trusts, and was arbitrable under their arbitration agreement. Therefore, McLeod did not exceed his authority in determining that Rubenstein was never appointed by Brown.

## B.   Misconduct and Bias

Brown argues that McLeod was biased in favor of Brown-Thill on the basis of McLeod's ex parte conduct in prior arbitrations. No evidence of ex parte conduct in the present matter was offered to the Court. Brown's evidence is primarily old legal bills from Cooper that describe each day's legal activities in concise sentences, in which various people and the issues they discussed are listed together with no indication that they occurred simultaneously. As the Court discusses in a separate decision involving a March 14, 2011 arbitration award between the parties, the evidence of ex parte conduct that Brown presented is not sufficient to warrant vacatur under any provision in 9 U.S.C. §10. As stated by the Eighth Circuit, "[P]arties to an arbitration choose the method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen." Winfrey v. Simmons Foods Inc., 495 F.3d 549, 551 (8th Cir. 2007) (citing Delta Mine Holding Co. v. AFC Coal Prop., 280 F.3d 815, 821 (8th Cir. 2001), cert. denied, 537 U.S. 817 (2002)). Here, the parties selected McLeod as their mediator and arbitrator, thus authorizing ex parte conduct, and the evidence does not show McLeod was ever acting outside of his mediator role when the alleged ex parte contacts took place. Brown also presented two emails from McLeod warning the parties about contacting him

ex parte. They show that the parties had contacted McLeod ex parte, that McLeod welcomed ex parte contacts in his mediator role but not in his arbitrator role, and that he reserved the right to share any information he received in his arbitrator role with each party. Brown also does not show, as required, that McLeod's ex parte conduct deprived him of a fair hearing. <u>M & A Elec. Power Co-op. v. Local Union No. 702, Intern. Broth. of Elec. Workers, AFL-CIO</u>, 977 F.2d 1235, (8th Cir. 1992) (A "party seeking a vacation of an award on the basis of ex parte conduct must demonstrate that the conduct influenced the outcome of the arbitration."). The Court found no evidence that McLeod based his decision on evidence other than Brown-Thill's many witnesses and exhibits during the arbitration. Therefore, McLeod's ex parte conduct is not grounds for vacatur.

Brown also argues McLeod committed misconduct at the arbitration because of various statements he made, some of which are weakly alleged to have induced Brown not to attend the hearing. The Court cannot find that McLeod's improper statement that he had already pre-judged the outcome showed bias against Brown rising to the level required for vacatur. The evidence presented at the arbitration was more than enough to support the conclusions McLeod reached in his award. The parties had already informed McLeod of their positions through their motions, McLeod was authorized to hear the parties' arguments in his mediator role, and at the time of the December 5, 2011 arbitration McLeod was, without doubt, well acquainted with the parties, their many disputes, and the underlying causes of those disputes. Therefore his bias against Brown's continued service as co-trustee, if any, was acquired during the arbitrations and was not improper. Brown also alleges that McLeod stated he believed the fairest solution would be to remove both Brown and Brown-Thill, and

asked Brown to deliver a proposed award requesting such relief. This statement does not show bias, but instead a desire to reach a fair solution for the sake of both parties. Brown nevertheless testified that he took McLeod "at his word," thus suggesting he relied on McLeod's alleged "offer" in deciding not to attend. But this argument seems calculated to create doubt where none should exist, and in fact, Brown did not testify that McLeod assured him he would grant Brown's proposal. Any alleged reliance on McLeod's request for an award proposal cannot be said to have deprived Brown of a fair hearing. Although it was arguably improper for McLeod to tell Brown his presence at the arbitration was unnecessary, it is not enough to show bias, and Brown does not claim McLeod prevented him from attending. Brown's decision not to attend was based largely upon his own belief that McLeod did not have jurisdiction to arbitrate the dispute. He could have preserved his objections and argued on the merits, but instead he chose not to attend the arbitration. Int'l. Brotherhood of Elec. Workers v. Hope Elec. Corp., 380 F. 3d 1084 (8th Cir. 2004) (A party may preserve an objection to the arbitrator's authority by objecting to the arbitrator's authority, refusing to argue the arbitrability issue, and proceeding to the merits of the agreement).

## C. Costs, Losses, and Attorneys' Fees

Brown-Thill has requested attorney's fees pursuant to the arbitration agreement in connection with this matter. The first sentence of § E provides that the arbitration agreement "shall be a complete bar and defense" to any judicial proceeding "arising out of or in connection with this Agreement," and that the "responding party shall be entitled to . . . recovery of all costs, losses, and attorney's fees" *if* "*either party pursues any claim, dispute, or controversy . . . in a proceeding other*

*than the arbitration provided herein."* (emphasis added). The arbitration agreement also states, in §

C, "Judgment may be entered upon any award rendered by the arbitrator in accordance with applicable

law in any court of competent jurisdiction."

Section C specifically allows a party to seek a "Judgment" to be entered upon any award

rendered by the arbitrator. This would include motions to confirm or vacate an arbitration award.

The prohibition against judicial proceedings "arising out of or in connection with this agreement," is

related to disputes that are not first submitted to "the arbitration provided herein." The § E

provision is clearly meant to compel the parties to arbitrate their disputes, not to prevent them from

seeking to vacate or confirm an award in a court. Accordingly, the Court denies Brown-Thill's

request for attorneys' fees.

## V. Conclusion

Accordingly, it is hereby

ORDERED that plaintiff Susan Brown-Thill's Application to Confirm Arbitration Award

(Doc. #1) is granted. It is further

ORDERED that plaintiff Susan Brown-Thill's Motion for Summary Judgment on Her

Application for Confirmation of the December 12, 2011 Arbitration Award and Order (Doc. #23) is

granted. It is further

ORDERED that defendant Richard Brown's Cross-Motion for Summary Judgment Vacating

⌂29⌂

Arbitration Award (Doc. #38) is denied.    It is further

ORDERED that defendant Brown's Motion for Leave to File Copy of Professor Hanna's Certification (Doc. #57) is granted.    It is further

ORDERED that Brown's Motion Requesting Court to Consider When Deciding Pending Summary Judgment Motions Related State Court Litigation Order (Doc. #68) is granted.


/s/ Scott O. Wright

SCOTT O. WRIGHT
Senior United States District Judge

Dated:    March 8, 2013

⌂30⌂